# UNITED STATES DISTRICT COURT
## DISTRICT OF NORTH CAROLINA
### Western District

| | |
|---|---|
| **SERENA EVANS,** | |
| *Plaintiff* | |
| v. | |
| **CHARLOTTE-MECKLENBURG BOARD OF EDUCATION** | **Case No. _____** |
| *Defendant.* | **JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY DEMAND

**NOW COMES** the Plaintiff, Serena Evans, by and through her attorneys, Ketterer, Browne & Associates, LLC, and brings forth this Complaint against the Defendant, Charlotte-Mecklenburg Board of Education, and in support sets forth the following:

## PARTIES, JURISDICTION, AND VENUE

1.      At all times relevant to this action, Plaintiff is an adult resident of Charlotte, Mecklenburg County, North Carolina (hereinafter referred to as "Plaintiff").

2.      At all times relevant to this action, Defendant Charlotte-Mecklenburg Board of Education (hereinafter referred to as "Defendant" or "CMS") is organized and existing under the laws of the State of North Carolina and maintains its principal place of business at P.O. Box 30035, Charlotte, NC 28230-0035. Defendant CMS operates member schools, including Myers Park High school (hereinafter referred to as "MPHS"), where Plaintiff attended.

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because Plaintiff's statutory claim asserts a federal question over which this Court

has jurisdiction and Plaintiff asserts state-law claims over which this Court has supplemental jurisdiction.

4.      This Court has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(1)(a) because Defendant is domiciled in and conducts business within this judicial district.

5.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because all the acts and omissions alleged herein occurred in this judicial district.

6.      The Western District is the proper venue per 28 U.S.C. § 100(1).

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

**PLAINTIFF EXPERIENCED HARASSMENT STARTING IN MIDDLE SCHOOL**

7.      CMS is comprised of member schools including Alexander Graham Middle School, where Plaintiff attended grades 7 and part of grade 8, and MPHS, a co-educational, public secondary school serving grades 9-12.

8.      CMS is governed by a Board of Education, which oversees all policies, budget and disciplinary actions for the school system, covering 180 schools and more than 140,000 students.

9.      Alexander Graham Middle School and MPHS are both operated and governed by Defendant CMS.

10.     Prior to enrolling at Alexander Graham Middle School and MPHS, Plaintiff thrived in elementary school, where she excelled in sports and enjoyed numerous close friendships.

11.     Plaintiff grew up in a closely-knit family and had strong relationships with her parents.

12.     Plaintiff and her parents believed she would be safe and would thrive at CMS-member schools as she had in elementary school.

2

13.     Plaintiff enrolled at Alexander Graham Middle School in 2014 for the start of 7th grade.

14.     Beginning in the fall of the 2014-2015 school year, Plaintiff experienced sexual harassment perpetrated by male classmates.

15.     The sexual harassment Plaintiff endured took the form of unwanted physical touching, including groping her breasts and buttocks, "accidentally" bumping into Plaintiff or grabbing Plaintiff when she was bent over, as well as verbal harassment such as vulgar and sexually suggestive comments about Plaintiff's body and the perpetrators' desire to have sex with her.

16.     This harassing activity took place in classrooms, hallways, stairwells, as well as at recess and in the lunchroom and on the bus.

17.     Plaintiff recalls that various teachers and/or administrators observed and overheard the sexual harassment Plaintiff experienced.

18.     Plaintiff directly reported her experiences with sexual harassment to her teachers, school administrators, and her counselor, who encouraged Plaintiff to "ignore the boys" and to make concessions for their behavior since "girls mature faster than boys do."

19.     Plaintiff began having significant, increased anxiety and depression issues in her 7th grade year as a result of being sexually harassed and assaulted at Alexander Graham Middle School.

**CMS MEMBER SCHOOLS EVINCE A HYPER-SEXUALIZED CULTURE**

20.     Plaintiff found MPHS to be far from the safe, caring community that she was promised.

21.     In fact, the pattern of harassment and sexual assault Plaintiff experienced at Alexander Graham middle school intensified and continued into her high school experience at MPHS, another CMS-member school.

22.     From the time she arrived on campus, Plaintiff experienced unwelcome sexual advances from some male students who were emboldened by formal and informal "traditions" at the school.

23.     Unbeknownst to Plaintiff, older boys started to sexually target her the moment she set foot on campus.

24.     The concept of MPHS students engaging in sexual behavior on MPHS property, often during the school day, has long been part of MPHS's ethos.

25.     Some of the frequent venues for sexual behavior on MPHS's campus are the bathrooms near the gym and locker rooms (hereinafter the "Bathroom"), which are largely unused during the school day.

26.     The culture of using the Bathroom as a venue for engaging in sexual behavior during the school day was a prevalent part of MPHS' culture while Plaintiff was a student and was well known to the faculty and administrators.

27.     This hyper-sexualized culture at MPHS was fueled in large part by a general consensus that student-athletes – especially male student-athletes – were "above the law" and free from recrimination for rule-breaking.

**CMS' FAILURE TO PREVENT AND STOP SEXUAL HARASSMENT AND ASSAULT ON ITS CAMPUSES**

28.     MPHS and CMS failed to investigate, report, or take any meaningful action to curb instances of sexual harassment and assault on its campus prior to Plaintiff's enrollment.

4

29.     Upon information and belief, other former MPHS students in addition to Plaintiff were the victims of sexual assault during their tenure at MPHS for which no investigation by CMS took place.

30.     This failure is not surprising given MPHS' and CMS' pattern of ignoring sexual assault and harassment.

31.     The U.S. Department of Education's Office of Civil Rights ("OCR") twice investigated CMS in 2016-2017 for allegations of mishandling of CMS students' sexual assault and harassment reports. As a result of both investigations, CMS agreed to implement changes outlined in a Resolution Agreement with OCR that required CMS to overhaul its investigative policies and ensure compliance with the tenets of Title IX. CMS still falls woefully short of these regulations and guidelines.

32.     For example, a peer of Plaintiff's by the name of Nikki Wombwell, has decried her experience reporting her sexual assault to CMS in 2014.

33.     In 2015, another female student of MPHS ("Jane Doe") filed a lawsuit alleging that her reported sexual assault was swept under the rug by MPHS administration, and that she was threatened with disciplinary action for making what the school considered to be a false accusation.

34.     In 2021, a student at Hawthorne Academy of Health Sciences, another CMS-member school, filed a lawsuit alleging that she was suspended for reporting a male classmate's sexual assault. There were four assaults made public in 2021 involving the Olympic, Hawthorne, West Charlotte, and Butler schools, all members of CMS.

35.     MPHS and CMS were aware that over 80 reports of sexual assault across its campus were recorded from 2011-2021.

36.     However, emails provided by CMS in response to a public records request show that CMS officials do not keep one set of data tracking reports of rape, sexual assault and sexual harassment on campus, necessarily calling into question the categorization and recording of reports.

37.     Similarly, CMS was sued in 2021 based on allegations that CMS administrators committed perjury under oath when questioned about their prior knowledge of sexual assaults having occurred between CMS students over the past several years.

38.     MPHS and CMS were, or should have been, aware that many of its male students (some of them over the age of 18) had escalated the Bathroom sex tradition by using that space as a venue for forced sexual encounters with female students.

39.     MPHS and CMS knew or should have known that students used the Bathroom as a venue for sexual harassment and/or statutory rape and secured MPHS facilities that students used as "hook-up" spots or venues for sexual behavior.

40.     MPHS and CMS took no significant action to investigate this allegation or any other instances of alleged aggressive sexual behavior by its male students.

41.     Similarly, MPHS and CMS failed to investigate the usage of the Bathroom as a venue for sexual encounters, despite many member schools' use of key cards and electronic tracking that would have made it possible for CMS to determine which male students were luring female students into the Bathroom for sexual encounters.

42.     Had MPHS and CMS conducted the careful investigation that was plainly warranted and taken appropriate action, these known instances of sexual assault could have been easily prevented.

43.     CMS' failure to act resulted in, among other harms, Plaintiff's sexual assault in October 25, 2016 as described herein.

44.     MPHS and CMS knew or should have known that former MPHS principal Mark Bosco was ill-equipped and negligent in his handling of sexual misconduct reporting amongst MPHS students, culminating in Bosco receiving a new senior administration job within the district in 2021.

45.     MPHS and CMS knew or should have known that MPHS, under Bosco's leadership, was failing to adhere to and implement established Title IX protocols and was woefully inadequate in its treatment of sexual assault and harassment amongst its students.

## PLAINTIFF IS REPEATEDLY HARASSED AND ULTIMATELY ASSAULTED ON MPHS CAMPUS

46.     Plaintiff began her high school career as a freshman at MPHS in the fall of 2016, when she was just fourteen years old.

47.     Plaintiff immediately began experiencing verbal and physical harassment from male students, including vulgar and sexually solicitous statements and unwanted physical touching.

48.     Plaintiff made the girls' tennis team and as such frequented the practice spaces, locker rooms, and athletic training office made available to MPHS student-athletes, including Plaintiff.

49.     Girls' tennis practice overlapped in time with boys' football practice, such that the football and tennis players were often in the practice spaces, basement hallways, locker rooms, and athletic training office at the same time.

50.     The football players routinely made sexually harassing and soliciting comments to female students, including Plaintiff, in earshot of coaches and athletic training personnel.

7

51.     Within weeks of the start of the school year, a senior football player ("D.V.") began targeting Plaintiff.

52.     Unlike other male students who harassed and assaulted Plaintiff, D.V.'s conduct was often covert or innuendo-laden; he would often create situations in which he could "innocently" touch or make physical contact with Plaintiff.

53.     Plaintiff began to change her appearance and initiate boundaries to dissuade further harassing conduct, including wearing baggy sweat clothes to school and remaining quiet in response to being harassed; none of this worked.

54.     In an attempt to set boundaries with her male peers, Plaintiff was met with chastisement from students for being "antisocial" and a "bitch", while the MPHS administration cautioned her to be careful about how she acted or dressed around her male classmates.

55.     D.V.'s harassment only intensified in response to Plaintiff's attempts to evade his attention.

56.     On one occasion in early October, Plaintiff was told by a teacher to wait outside of the classroom for a conversation with the teacher. While she waited outside, D.V. emerged from a nearby stairwell and propositioned Plaintiff for intercourse, imploring her to have sex with him because "I'm turning 18 soon and I need to get with you before I turn 18", suggesting a window of opportunity for D.V. to have sex with a newly 15-year-old Plaintiff to avoid any implications of statutory rape.

57.     D.V. continued his practice of verbally and physically harassing Plaintiff on MPHS grounds.

58.     On the afternoon of October 25, 2016, Plaintiff was preparing for her tennis team's participation in a tennis tournament.

8

59.     In an attempt to clear her mind and dress for the match, Plaintiff retreated into the locker room hallway to go to the girls' locker room.

60.     D.V. was laying in wait, trying to talk to Plaintiff and engage her in conversation and corner her alone.

61.     Plaintiff attempted to dissuade D.V. from conversation, reminding him that she was trying to prepare for her tennis match.

62.     D.V. was not deterred and kept distracting Plaintiff while moving closer and closer to her.

63.     Plaintiff began to get nervous and tried to back away from D.V.

64.     D.V. got so close to Plaintiff that she saw the look in his eyes, which conveyed to Plaintiff that she was in danger.

65.     As an involuntary response to this fear, and as a common defense mechanism when faced with imminent battery, Plaintiff froze on the spot.

66.     D.V. lead Plaintiff into a secluded Bathroom near the gym where he pushed her into a handicap stall and locked the door.

67.     D.V. forced Plaintiff to perform oral sex on him, and then turned Plaintiff's body away from him and forcibly raped her (the incident will hereinafter be referred to as the "Bathroom Assault").

68.     Upon ejaculation, D.V. threatened Plaintiff that "this is our little secret, you can't and won't tell anyone."

69.     Plaintiff felt sick and dissociated from her own body.

70.     Plaintiff was visibly upset to the point that her teammates and coach assumed she was ill and told her to go home and rest as she was clearly not in any condition to play in her match.

71.     Plaintiff went home and went straight to bed.

72.     Plaintiff woke up screaming such that her mother feared her daughter was in imminent physical danger.

73.     Plaintiff began having severe diarrhea and vomiting episodes, and was unresponsive to her mother's queries, such that her mother took her to the emergency room.

74.     Plaintiff continued to feel sick and despondent for the next several days and was unsure of whether she would be physically able to compete in that Friday's tennis match.

75.     Plaintiff's mother drove her to the tennis tournament in hopes that Plaintiff would feel better by the time of the match.

76.     By Friday morning, Plaintiff felt worse and was in such physical distress that she could hardly walk unassisted.

77.     Plaintiff informed her mother that her stomach and vaginal area were causing her extreme pain and discomfort.

78.     Plaintiff's mother called the family's OB/gyn asking for a same-day urgent appointment.

79.     Plaintiff saw her OB/gyn on October 28, 2016.

80.     On the drive from Raleigh to the OB/gyn appointment in Charlotte, Plaintiff confided in her mother about the sexual assault.

81.     The OB/gyn determined that Plaintiff's pain and discomfort were caused by a ruptured ovarian cyst, which the OB/gyn attributed to the forced intercourse.

10

82. Plaintiff's mother had to take Plaintiff to the ER to get treated for increasing pain and get a new corrected prescription.

83. Plaintiff and her mother went to the police to report the sexual assault on Monday, October 31, 2016.

### PLAINTIFF IS TREATED LIKE A PROBLEM, NOT A SURVIVOR

84. On or around October 30, 2016, Plaintiff's mother emailed Mark Bosco, then the principal of MPHS, to report the assault.

85. Bosco never responded to the email.

86. Upon information and belief, the police officer who investigated the sexual assault interviewed D.V. at MPHS in the presence of MPHS administrators, and D.V.'s wholesale denial of the assault was taken by MPHS administration as fact.

87. Curiously, D.V. reiterated during that interview that he felt there was a ticking clock with regards to his desire to have sex with Plaintiff, once again alluding to the statutory rape charges that he could face if he'd engaged in intercourse with Plaintiff upon turning 18.

88. Plaintiff and her mother met with Vice Principal Tyson Jeffus, who was "assigned" to handle the "incident", as MPHS called Plaintiff's rape, to discuss next steps including the school's investigation of the reported sexual assault.

89. Jeffus took a defensive position immediately, and instead of offering Plaintiff resources or commencing an immediate investigation per Title IX protocols, Jeffus actively dissuaded Plaintiff from pursuing her claims.

90. Jeffus threatened Plaintiff by stating that if she were to go forward with her claims "and D.V. is exonerated, you'll be suspended, and this will damage your chances of getting into college."

91.     D.V. was never disciplined nor was he instructed to stay away from Plaintiff. In fact, MPHS did not do anything to protect Plaintiff from further harassment and bullying from her peers as a result of the sexual assault becoming public knowledge on campus.

92.     D.V. was allowed to continue attending classes, extracurricular events and activities, and playing football without any consequence for his actions or mortarium on his campus privileges during the pendency of the investigation.

93.     Plaintiff was forced to encounter D.V. and his continued harassment for the remainder of her time at MPHS.

94.     After her bathroom assault, Plaintiff became increasingly anxious at the idea of having anything to do with MPHS or her rapist. Between having flashbacks about her assault and increased anxiety about being on campus, along with the severe pain from her ovarian cyst rupturing, Plaintiff became unable to be on or around MPHS campus.

95.     Due to these circumstances, Plaintiff eventually realized that she was unable to attend classes at MPHS any longer.

96.     Also, due to the pain produced from the ruptured cyst along with PTSD, Plaintiff had to stop playing competitive tennis.

97.     Plaintiff's mother regularly asked for updates from Jeffus and Bosco regarding the investigation of the rape and bathroom assault. Bosco never responded to Plaintiff's mother. Jeffus, if he responded at all, would state that "we are working on it".

98.     At no time were Plaintiff and her mother informed of Plaintiff's rights under Title IX or CMS' own express policies.

12

99. Due to the problematic and unresolved circumstances, Plaintiff's mother worked out an agreement with Jeffus for Plaintiff to be able to finish out her MPHS fall semester (2016) by doing her school work at home, and her mother paying for private tutors.

100. Immediately after the Bathroom Assault, Plaintiff's mental health, physical health, and academic performance began to noticeably suffer.

101. Due to the bathroom assault, Plaintiff required mental health treatment for post-traumatic stress disorder.

102. Among other things, Plaintiff began to experience heightened fear and anxiety, depression, dissociation, and some suicidal ideation, which is attributed clinically to her experiences of having been sexually assaulted.

103. Plaintiff disclosed her sexual assault and harassment to MPHS administrators who failed to report the sexual assault to state or local authorities, failed to conduct any investigation, failed to do anything to stop the ongoing sexual assault and harassment, and failed to offer Plaintiff sufficient accommodations based on the sexual harassment and assault she had reported.

104. Upon information and belief, these issues continue to pervade CMS campuses, including MPHS.

## CAUSES OF ACTION

### COUNT I – *Violation of 20 U.S.C. § 1681, et. seq.*
### *Title IX of the Education Amendments Act*

105. Plaintiff incorporates and realleges all paragraphs of this Complaint into this Count.

106. During the relevant timeframe, Defendant was a recipient of federal education funding within the meaning of Title IX, 20 U.S.C. § 1681(a).

107. Defendant exercised substantial control over both students who assaulted Plaintiff and over the boys who harassed her. All the events giving rise to this claim occurred on MPHS' grounds.

108. In or about October 2016, Plaintiff faced severe discrimination based on sex when she was sexually assaulted verbally, physically and digitally on school grounds by MPHS students, some of whom were over the age of 18. Plaintiff was also the victim of rape and of a pattern of unrelenting sexual harassment. The sexual assaults and harassment Plaintiff endured were sufficiently severe, pervasive, and objectively offensive to constitute a hostile educational environment for her at MPHS.

109. Defendant was on actual notice of the sexual assaults committed on Plaintiff and the hypersexual hostile environment that existed at the school during Plaintiff's time there.

110. Despite being on actual notice of the assaults on and harassment of Plaintiff, MPHS failed to take meaningful action to investigate the assault and/or to protect Plaintiff from retaliation on the part of faculty, staff, and fellow students regarding Plaintiff's attempts to seek out a safe educational environment.

111. Defendant acted with deliberate indifference to the complaints and other notice regarding the ongoing hostile education environment, ongoing threats, bullying, and retaliation faced by Plaintiff after reporting that she was sexually assaulted.

112. The hostile educational environment at MPHS, a CMS school, effectively barred Plaintiff's access to educational opportunities and benefits because she was forced to leave MPHS due to the continuing hostile environment at the school and due to ongoing bullying and retaliation at the school.

14

113. In addition to the foregoing violations of Title IX, CMS violated its Title IX obligations by:

   a. Failing to engage a Title IX coordinator or any other person to receive Plaintiff's complaints about gender-based discrimination, harassments, and/or assaults;

   b. Failing to implement or address any policy for a student's reporting of sexual harassment and/or sexual assault;

   c. Failing to implement or address a program for prevention of sexual harassment and sexual assault;

   d. Failing to implement or address a program or policy for investigating sexual harassment or sexual assault;

   e. Failing to implement or address a program or policy for offering accommodations to victims of sexual assault;

   f. Failing to implement or address a program or policy for preventing retaliation against those who report sexual harassment and/or sexual assault;

   g. Failing to supervise, monitor, and/or train staff to handle reports of sexual assault appropriately and adequately; and,

   h. Retaliating against Plaintiff for reporting that she was sexually assaulted by subjecting her to arbitrary, capricious, and unwarranted "discipline" for pretextual reasons that masked the discriminatory nature of the school's treatment of her.

114. As a direct and proximate cause of Defendant's violation of Title IX, Plaintiff has been deprived of educational opportunities and benefits that delayed her academic attainment during her high school education and thereafter. This deprivation was the result of Defendant's deliberate indifference to the hostile educational environment at MPHS.

15

115. As a direct and proximate cause of Defendant's violation of Title IX, Plaintiff has experienced and will likely continue to experience severe emotional distress accompanied by objective physical manifestations and/or symptoms (such as nausea, vomiting, elevated heart rate, sweating, nightmares, night terrors, and inability to sleep), loss of functioning, loss of earning potential, medical bills, and other pecuniary harms to be established at trial.

**WHEREFORE** Plaintiff demands compensatory damages to be proven at trial in excess of the jurisdictional amount of $75,000; all costs and expenses of this lawsuit, including attorneys' fees; enhanced compensatory damages as permitted by law; punitive damages in an amount to be determined at trial; and all other and further relief that justice may require.

## COUNT II – *Negligent Supervision and Retention*

116. Plaintiff incorporates and realleges all paragraphs of this Complaint into this Count.

117. Defendant had a fiduciary relationship with Plaintiff as both a student and, at the time of her assault, minor under the age of 18.

118. As a North Carolina state and federally funded educational institution, MPHS and CMS owed Plaintiff a special duty of trust and confidence to ensure her safety and well-being.

119. Defendant CMS, through its Board of Education Members, administrators, faculty, or staff, breached their duty owed to Plaintiff by, among other things:

    a. Failing to properly protect Plaintiff, a minor at the time of her assault, from sexual abuse and harassment;

    b. Improperly protecting Plaintiff, a minor at the time of her assault, from sexual abuse and harassment;

16

c.  Failing to investigate, correct, and/or otherwise address the openly pervasive environment of sexual harassment and sexual objectification of its female students by its male students;

d.  Failing to investigate, correct, and/or otherwise address the Bathroom tradition that emerged from this environment;

e.  Failing to investigate, prohibit, and/or otherwise address the formation of the illicit use of MPHS facilities for sexual exploits and use of MPHS email, networks, Internet connections, and other devices to ritualize, coordinate, and otherwise openly discuss those exploits;

f.  Ignoring and/or otherwise failing to properly address complaints about numerous instances of sexual assaults occurring on the MPHS campus;

g.  Failing to promptly report Plaintiff's sexual assaults to the authorities;

h.  Failing to take any action to prevent retaliation against Plaintiff after her assaults were reported to MPHS;

i.  Failing to conduct an exit interview with Plaintiff when she left the school;

j.  Failing to heed numerous warnings regarding after-hours security and lax disciplinary policies;

k.  Failing to supervise, monitor, and/or train staff to handle reports of sexual assault appropriately and adequately; and,

l.  Retaliating against Plaintiff for reporting that she was sexually assaulted by subjecting her to arbitrary, capricious, and unwarranted "discipline" for pretextual reasons that masked the discriminatory nature of the school's treatment of her.

17

120.     Defendant CMS, through its Board of Education members, administrators, faculty, or staff, knew or should have known that it had created an opportunity for Plaintiff to be sexually assaulted and harassed and that the lack of protocols for which incidents of sexual assault were reported were woefully insufficient.

121.     Defendant failed to provide adequate training, monitoring, and supervision of its administrators, faculty, and/or staff concerning reports of sexual assault.

122.     Defendant carelessly and recklessly failed to supervise its male students, even after specific complaints of sexual assault and harassment had been lodged against them by various students, including Plaintiff.

123.     Defendant failed to implement training and monitoring mechanisms by which sexual assaults such as those suffered by Plaintiff could have been prevented, or at the very least, appropriately reported to parents and law enforcement authorities.

124.     Defendant's conduct was wanton, malicious, or oppressive in that Defendant disregarded or exhibited reckless indifference to the foreseeable risks of harm and acted with ill will, hatred, hostility, a bad motive, or the intent to abuse its power.

125.     As a direct and proximate cause of Defendant's violation of its fiduciary duty to her, Plaintiff has experienced and will likely continue to experience severe emotional distress accompanied by physical manifestations (such as nausea, vomiting, elevated heart rate, sweating, nightmares, night terrors, and inability to sleep) and other harms to be established at trial.

126.     As a direct and proximate result of Defendant's negligence, Plaintiff sustained serious injuries, had to undergo treatment and medical care, to incur medical expenses, incur lost wages, to lose time from her daily pursuits, to lose the ability to function normally, and she suffered impairment of her future earnings.

**WHEREFORE** Plaintiff demands compensatory damages to be proven at trial in excess of the jurisdictional amount of $75,000; all costs and expenses of this lawsuit, including attorneys' fees; enhanced compensatory damages as permitted by law; punitive damages in an amount to be determined at trial; and all other and further relief that justice may require.

## COUNT III – *Negligence*

127.    Plaintiff incorporates and realleges all paragraphs of this Complaint into this Count.

128.    In the fall of 2016, Plaintiff enrolled at MPHS and was thereby deprived of the protection of her parents while on school grounds and during the school day.

129.    Upon Plaintiff's enrollment, Defendant assumed custody of her and other students while on the school's premises.

130.    In so doing, Defendant entered into a relationship with Plaintiff that imposed on it a duty of reasonable care, including, among other things, a duty of supervision to protect Plaintiff from reasonably foreseeable harm.

131.    Defendant CMS, through its Board of Education members, administrators, faculty, or staff, breached their duty owed to Plaintiff by, among other things:

    a.    Failing to properly protect Plaintiff, a minor at the time of her assault, from sexual abuse and harassment;

    b.    Failing to identify and eliminate, minimize, and/or address known and foreseeable risks of physical and emotional injury;

    c.    Improperly protecting Plaintiff, a minor at the time of her assault, from sexual abuse and harassment;

19

d.  Failing to investigate, correct, and/or otherwise address the openly pervasive environment of sexual harassment and sexual objectification of its female students by its male students;

e.  Failing to investigate, correct, and/or otherwise address the Bathroom tradition that emerged from this environment;

f.  Failing to investigate, prohibit, and/or otherwise address the formation of the illicit use of MPHS facilities for sexual exploits and use of MPHS email, networks, Internet connections, and other devices to ritualize, coordinate, and otherwise openly discuss those exploits;

g.  Ignoring and/or otherwise failing to properly address complaints about numerous instances of sexual assaults occurring on the MPHS campus;

h.  Failing to promptly report Plaintiff's sexual assaults to the authorities;

i.  Failing to take any action to prevent retaliation against Plaintiff after her assaults were reported to MPHS;

j.  Failing to conduct an exit interview with Plaintiff when she left the school;

k.  Failing to heed numerous warnings regarding after-hours security and lax disciplinary policies;

l.  Failing to supervise, monitor, and/or train staff to handle reports of sexual assault appropriately and adequately; and,

m.  Retaliating against Plaintiff for reporting that she was sexually assaulted by subjecting her to arbitrary, capricious, and unwarranted "discipline" for pretextual reasons that masked the discriminatory nature of the school's treatment of her.

20

132.     Defendant CMS, through its Board of Education members, administrators, faculty, or staff, knew or should have known that it had created an opportunity for Plaintiff to be sexually assaulted and harassed.

133.     Defendant's conduct was wanton, malicious, or oppressive in that Defendant disregarded or exhibited reckless indifference to the foreseeable risks of harm and acted with ill will, hatred, hostility, a bad motive, or the intent to abuse its power.

134.     As a direct and proximate cause of Defendant's violation of its fiduciary duty to her, Plaintiff has experienced and will likely continue to experience severe emotional distress accompanied by physical manifestations (such as nausea, vomiting, elevated heart rate, sweating, nightmares, night terrors, and inability to sleep) and other harms to be established at trial.

135.     As a direct and proximate result of Defendant's negligence, Plaintiff sustained serious injuries, had to undergo treatment and medical care, to incur medical expenses, incur lost wages, to lose time from her daily pursuits, to lose the ability to function normally, and she suffered impairment of her future earnings.

**WHEREFORE** Plaintiff demands compensatory damages to be proven at trial in excess of the jurisdictional amount of $75,000; all costs and expenses of this lawsuit, including attorneys' fees; enhanced compensatory damages as permitted by law; punitive damages in an amount to be determined at trial; and all other and further relief that justice may require.

<u>**COUNT IV** – *Premises Liability*</u>

136.     Plaintiff incorporates and realleges all paragraphs of this Complaint into this Count.

137.     While on MPHS' premises, Plaintiff was a business invitee of MPHS.

138.     MPHS and CMS owed Plaintiff a duty to use reasonable care under all circumstances in the maintenance and operation of the premises, and to take reasonable

precautions to protect her against foreseeable dangers arising out of the arrangements or use of the premises.

139. Defendant CMS, through its Board of Education members, administrators, faculty, or staff, failed to act with reasonable care to protect Plaintiff and her fellow female students from foreseeable dangers of which MPHS had ample actual notice, including, among other things:

a. Failing to properly protect Plaintiff, a minor at the time of her assault, from sexual abuse and harassment;

b. Improperly protecting Plaintiff, a minor at the time of her assault, from sexual abuse and harassment;

c. Failing to investigate, correct, and/or otherwise address the openly pervasive environment of sexual harassment and sexual objectification of its female students by its male students;

d. Failing to investigate, correct, and/or otherwise address the Bathroom tradition that emerged from this environment;

e. Failing to investigate, prohibit, and/or otherwise address the formation of the illicit use of MPHS facilities for sexual exploits and use of MPHS email, networks, Internet connections, and other devices to ritualize, coordinate, and otherwise openly discuss those exploits;

f. Ignoring and/or otherwise failing to properly address complaints about numerous instances of sexual assaults occurring on the MPHS campus;

g. Failing to promptly report Plaintiff's sexual assaults to the authorities;

h. Failing to take any action to prevent retaliation against Plaintiff after her assaults were reported to MPHS;

22

i. Failing to conduct an exit interview with Plaintiff when she left the school;

j. Failing to heed numerous warnings regarding after-hours security and lax disciplinary policies;

k. Failing to supervise, monitor, and/or train staff to handle reports of sexual assault appropriately and adequately; and,

l. Retaliating against Plaintiff for reporting that she was sexually assaulted by subjecting her to arbitrary, capricious, and unwarranted "discipline" for pretextual reasons that masked the discriminatory nature of the school's treatment of her.

140. Defendant CMS, through its Board of Education members, administrators, faculty, or staff, knew or should have known that it had created an opportunity for Plaintiff to be sexually assaulted and harassed.

141. Defendant's conduct was wanton, malicious, or oppressive in that Defendant disregarded or exhibited reckless indifference to the foreseeable risks of harm and acted with ill will, hatred, hostility, a bad motive, or the intent to abuse its power.

142. As a direct and proximate cause of Defendant's violation of its fiduciary duty to her, Plaintiff has experienced and will likely continue to experience severe emotional distress accompanied by physical manifestations (such as nausea, vomiting, elevated heart rate, sweating, nightmares, night terrors, and inability to sleep) and other harms to be established at trial.

143. As a direct and proximate result of Defendant's negligence, Plaintiff sustained serious injuries, had to undergo treatment and medical care, to incur medical expenses, incur lost wages, to lose time from her daily pursuits, to lose the ability to function normally, and she suffered impairment of her future earnings.

**WHEREFORE** Plaintiff demands compensatory damages to be proven at trial in excess of the jurisdictional amount of $75,000; all costs and expenses of this lawsuit, including attorneys' fees; enhanced compensatory damages as permitted by law; punitive damages in an amount to be determined at trial; and all other and further relief that justice may require.

## <u>COUNT V – *Intentional Infliction of Emotional Distress*</u>

144. Plaintiff incorporates and realleges all paragraphs of this Complaint into this Count.

145. While on MPHS' premises, Plaintiff was a business invitee of MPHS.

146. MPHS owed Plaintiff a duty to use reasonable care under all circumstances in the maintenance and operation of the premises, and to take reasonable precautions to protect her against foreseeable dangers arising out of the arrangements or use of the premises.

147. Defendant CMS, through its Board of Education members, administrators, faculty, or staff, failed to act with reasonable care to protect Plaintiff and her fellow female students from foreseeable dangers of which MPHS had ample actual notice, including, among other things:

   a. Failing to properly protect Plaintiff, a minor at the time of her assault, from sexual abuse and harassment;

   b. Improperly protecting Plaintiff, a minor at the time of her assault, from sexual abuse and harassment;

   c. Failing to investigate, correct, and/or otherwise address the openly pervasive environment of sexual harassment and sexual objectification of its female students by its male students;

   d. Failing to investigate, correct, and/or otherwise address the Bathroom tradition that emerged from this environment;

24

e.  Failing to investigate, prohibit, and/or otherwise address the formation of the illicit use of MPHS facilities for sexual exploits and use of MPHS email, networks, Internet connections, and other devices to ritualize, coordinate, and otherwise openly discuss those exploits;

f.  Ignoring and/or otherwise failing to properly address complaints about numerous instances of sexual assaults occurring on the MPHS campus;

g.  Failing to promptly report Plaintiff's sexual assaults to the authorities;

h.  Failing to take any action to prevent retaliation against Plaintiff after her assaults were reported to MPHS;

i.  Failing to conduct an exit interview with Plaintiff when she left the school;

j.  Failing to heed numerous warnings regarding after-hours security and lax disciplinary policies;

k.  Failing to supervise, monitor, and/or train staff to handle reports of sexual assault appropriately and adequately; and,

l.  Retaliating against Plaintiff for reporting that she was sexually assaulted by subjecting her to arbitrary, capricious, and unwarranted "discipline" for pretextual reasons that masked the discriminatory nature of the school's treatment of her.

148.  Defendant CMS, through its Board of Education members, administrators, faculty, or staff, knew or should have known that it had created an opportunity for Plaintiff to be sexually assaulted and harassed.

149.  Defendant's conduct was extreme and outrageous, and it intentionally or recklessly caused Plaintiff severe emotional distress.

150. Defendant's conduct was so outrageous in character, and so extreme in degree, that it exceeds all possible bounds of decency, is atrocious, and is utterly intolerable in a civilized community.

151. Defendant purposefully intended to cause or recklessly disregarded the high probability of causing a disturbance of Plaintiff's emotional tranquility that was so severe that harmful physical consequences resulted.

152. As a direct and proximate cause of Defendant's violation of its fiduciary duty to her, Plaintiff has experienced and will likely continue to experience severe emotional distress accompanied by physical manifestations (such as nausea, vomiting, elevated heart rate, sweating, nightmares, night terrors, and inability to sleep) and other harms to be established at trial.

153. As a direct and proximate result of Defendant's negligence, Plaintiff sustained serious injuries, had to undergo treatment and medical care, to incur medical expenses, incur lost wages, to lose time from her daily pursuits, to lose the ability to function normally, and she suffered impairment of her future earnings.

**WHEREFORE** Plaintiff demands compensatory damages to be proven at trial in excess of the jurisdictional amount of $75,000; all costs and expenses of this lawsuit, including attorneys' fees; enhanced compensatory damages as permitted by law; punitive damages in an amount to be determined at trial; and all other and further relief that justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues in this action so triable.

Respectfully submitted,

*/s/ Whitney Butcher*

Whitney Butcher (NC Bar No. 77272)
Christina Graziano (*pro hac vice* to be filed)
KETTERER, BROWNE & ASSOCIATES, LLC
336 S Main St.
Ste. 2A-C
Bel Air, MD 21014
Phone: 410-220-2341
Fax: 855-572-4637
Whitney@KBAAttorneys.com
Christina@KBAAttorneys.com

27